Hat, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
On July 15,1899, the plaintiff entered into a contract with the United States whereby it agreed to construct a timber dry dock at Mare Island, Cal., for the sum of $729,000. In January, 1900, Congress passed a law authorizing the Secretary of the Navy to change the structural material of said dry dock from timber to concrete and stone. On August 26, 1901, the plaintiff entered into a supplemental contract with the defendants whereby it agreed to construct the stone and concrete dry dock for the sum of $1,153,228.79 within 36 *344 calendar months from the date of said contract. Attached to these contracts and made a part thereof were a number of specifications. Among other specifications was one which provided that the plaintiff was to construct the cofferdam at its own expense and was to prepare the design for the same and submit it to the Bureau of Yards and Docks for its inspection previous to beginning its construction; and while the whole responsibility for its sufficiency was to rest upon the plaintiff, the bureau reserved the right to require it to be perfected in any respect in which the bureau might regard it as insufficient to protect the interests of the Government. The design for the cofferdam was iDroposed by the plaintiff, and modified by the Bureau of Yards and Docks.
The contract further provided that if any doubts or disputes arose as to the meaning or requirements of anything in the contract the matter should at once be referred for the consideration of the Chief of the Bureau of Yards and Docks, and his decision should be final, subject to the right of the plaintiff to appeal from such decision to the Secretary of the Navy, and his decision should be final as between the parties to the contract.
The plaintiff entered upon the work under the contract and proceeded to construct its cofferdam for the purpose of unwatering the dock site. The type of cofferdam which was proposed by the plaintiff turned out to be very expensive, and after spending nearly two years in trying to perfect it, and as it had repeatedly failed, the plaintiff finally abandoned it, and in November, 1903, submitted other plans for doing the work, one of which plans involved the building of the dock under water. The other of these plans provided for a complete self-supporting box or caisson, which was to be pumped out, and the concrete laid on the bottom and sides. The Chief of the Bureau of Yards and Docks refused to permit the plaintiff to use either of these plans. From this decision the plaintiff appealed to the Secretary of the Navy, who affirmed the decision of the Chief of the Bureau of Yards and Docks.
The plaintiff now insists that the method which it adopted to construct the cofferdam was impracticable. But the evi *345 dence in tbis case discloses that the plaintiff during the progress of the work, and as late as the summer of 1903, insisted that its method of construction was the proper one, and not until the plaintiff had called into consultation outside engineers was it persuaded that it had adopted a wrong method of construction. The plaintiff was responsible for the method of construction; it had agreed to assume responsibility for the cofferdam and to pay whatever it might cost to construct it. The work could not be done in accordance with the provisions of the contract until the dock site was unwatered, and if the work was delayed by the failure of the cofferdam that delay was not chargeable to the defendants. The methods proposed by the plaintiff after the failure of the cofferdam amounted, in the opinion of the Chief of the Bureau of Yards and Docks, to a change of the terms of the contract. His opinion was confirmed by the Secretary of the Navy. The plaintiff having agreed that the decision of the Secretary of the Navy in this and all other disputed matters should be final and binding upon it this court can not review that decision. Brinck v. United States, ante, p. 170.
At the time the original contract was executed there was, extending about 400 feet along the easterly water front at the side of the dry-dock, a timber wharf. Shortly after the execution of the original contract the United States advertised for proposals for the removal of the wharf and for the construction of a quay wall along the entire water front at the side of the dry-dock. The plaintiff protested against the building of this quay wall as an interference with his work on the dry-dock and as a violation of the specifications. This protest was overruled by the Bureau of Yards and Docks. The quay wall was completed before the supplemental contract was entered into by the plaintiff with the defendants, of which the plaintiff had full knowledge; and before executing the supplemental contract it could have protected itself from any consequences which it might have believed would result to it from the location of this quay wall.
The defendants required the plaintiff to shore the excavation so that injury to neighboring structures would be *346 avoided. The defendants were clearly within their rights as to this, the specification providing that “the excavation shall be shored and protected from caving or injury in a manner which shall be safe and sufficient in the opinion of the engineer in charge.” This shoring of the excavation on the side of the excavation where the quay was, was required by the engineer in charge. The plaintiff protested against the requirement of the engineer in charge; the Bureau of Yards and Docks sustained the engineer; and from this decision of the Bureau of Yards and Docks the plaintiff appealed to the Secretary of the Navy, who affirmed the decision of the bureau. The plaintiff again called this matter to the attention of the Secretary of the Navy, who referred it to the Attorney General, who agreed with the Secretary of the Navy as to the meaning and requirements of the contract.
The plaintiff does not allege nor imply that bad faith can be imputed to the Secretary of the Navy in any of the numerous decisions which he made upon request of the plaintiff during the progress of its work upon this contract.
After the failure of the cofferdam in the summer of 1903 little or nothing was done upon the work. It became evident that the plaintiff did not intend to prosecute the work, and the Secretary of the Navy on'April 28, 1904, declared the contract forfeited. The provisions of the contract were that if at any stage of the work the plaintiff failed to go forward with the work, or to make satisfactory progress toward its completion within the specified time, from causes within the control of the plaintiff, as decided by the Chief of the Bureau of Yards and Docks, it should be optional with the Secretary of the Navy to declare the contract forfeited on the part of the plaintiff.
The evidence clearly established the fact that satisfactory progress toward the completion of the work within the specified time was not being made by the plaintiff. Of the 36 months within which the work was to be completed 32 months had gone by and the plaintiff had only completed 23.6 per cent of the work. The causes of this failure in progress were within the control of the plaintiff, and there is *347 nothing in the contention of the plaintiff that the declaration of forfeiture was illegal.
The plaintiff alleges that the defendants allowed the new contractor to use a different method in unwatering the dock site from the method which was required of the plaintiff, and that this was a departure from the contract which relieves it from liability for the excess cost of completing the contract after the same was forfeited. The plaintiff contends that it had proposed and the defendants had rejected the very method which the defendants afterwards allowed the new contractor to use. It does not appear from the evidence that the methods were identical. The defendants, under the provisions of the contract, had the right to reject or adopt any proposal made by the plaintiff for a change in the carrying on of the work which departed from that prescribed by the contract and specifications. The contract and specifications with the new contractor were precisely the same with respect to this matter as they had been with the plaintiff, and lodged in the defendants the same discretion. If they exercised that discretion in such manner as to cause no loss to the plaintiff it can not complain. The method adopted certainly did not cause any loss to the plaintiff, but on the contrary enabled the work to be completed for less than it would otherwise have cost.
It appears from the evidence that the defendants in order to complete the contract after it had been forfeited reasonably expended more than the contract price which they had agreed to pay the plaintiff for the completion of the work. It also appears that if the plaintiff had been allowed to complete the work it could not have made any profit thereon.
The petition of the plaintiff will be dismissed, and it is so ordered.
The counterclaim filed by the defendants is not supported by any evidence, and the same will not be allowed.